IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE VROMAN,<br>    Plaintiff<br><br>        v.<br><br>A. CRIVELLI BUICK PONTIAC<br>GMC, INC.,<br>    Defendants. | C.A. 08-182 Erie<br><br>Magistrate Judge Baxter |

**OPINION AND ORDER**

United States Magistrate Judge Susan Paradise Baxter.

I.      **INTRODUCTION**

   A.      **Relevant Procedural History**

On June 23, 2008, Plaintiff Theodore Vroman, filed this employment discrimination action against Defendant A. Crivelli Buick Pontiac GMC, Inc. ("Crivelli"). [Document # 1]. In his Complaint, Plaintiff alleges that he was subjected to sex discrimination, a hostile or offensive work environment, and retaliation, during his employment with Crivelli as a service technician. In particular, Plaintiff claims that: (i) his female supervisor, Lugene Przestrzelski ("Przestrzelski"), "entered a restroom occupied by members of the opposite sex...," yet Crivelli "had no effective complaint resolution procedure, and did not take action on Plaintiff's complaint" regarding the incident (Complaint at ¶¶ 21-22); (ii) Przestrzelski created a hostile or offensive work environment by "frequently touching, patting and rubbing Plaintiff," and by making "suggestive and offensive comments to Plaintiff and other service technicians" (Id. at ¶ 11, 28); and (iii) Przestrzelski retaliated against Plaintiff for his complaints to management by "withholding lucrative service assignments" from him, thus depressing his earnings. (Id. at ¶ 14, 33-34). As relief for his claims, Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs.

Crivelli has filed a motion for summary judgment [Document # 20] seeking the entry of judgment against Plaintiff, as a matter of law, on all three of his claims. Plaintiff has filed a

brief in opposition to Crivelli's motion, and Crivelli has filed a reply brief. This matter is now ripe for consideration.

### B. Relevant Factual History[1]

Plaintiff began working for Crivelli as a service technician on May 23, 1997. (SMF ¶¶ 3, 8; RSMF ¶ 8). Przestrzelski became Plaintiff's supervisor approximately two years later. (SMF ¶¶ 13, 14; RSMF ¶ 8). Archie Simpson ("Simpson") was Przestrzelski's boss. (SMF ¶ 24).

During Plaintiff's employment with Crivelli, service technicians were paid according to a "flat rate" system, pursuant to which each technician's pay depended upon the number and type of jobs he completed in a workday. (SMF ¶ 15). Jeff Pennington ("Pennington") was the management official directly responsible for distributing work assignments to the service technicians, although Plaintiff alleges that he frequently saw and heard Pennington and Przestrselski confer about the allocation of these work assignments. (SMF¶¶ 16-17; RSMF ¶¶ 16-17). Throughout the term of his employment with Crivelli, Plaintiff consistently made less income and was consistently less productive than the other technicians. (SMF ¶ 51). In particular, Plaintiff maintained an efficiency rating of 88.2 percent, while his counterparts' efficiency ratings ranged from 155.8 percent to 111.3 percent. (Id.).

Sometime in 2005, Plaintiff and the other service technicians were asked to write down their complaints on paper. (SMF ¶ 19). In response, Plaintiff and another service technician submitted written complaints to Simpson. (SMF ¶ 20). In particular, Plaintiff complained that, when he went to use the inspection desk and/or the store computer, which were located in Przestrzelski's office at the time, Przestrzelski would rub his back and pat his rear end in a

---

[1] The factual history recited here has been gleaned from the undisputed material facts submitted by the parties [Document ## 22 and 27], as well as the evidence of record. Crivelli's Concise Statement of Material Facts [Document # 22] will be referred to as "SMF ¶ __," and Plaintiff's Response to Crivelli's Concise Statement of Material Facts [Document # 27] will be referred to as "RSMF ¶ __."

sexually suggestive manner, while calling him "honey" or "sweetie." (SMF ¶¶ 21, 27).² In response to the written complaints, the service desk, computer, and inspection supplies were moved outside of Przestrzelski's office, Przestrzelski's office was moved to a more interior location, and Przestrzelski was reprimanded by Simpson. (SMF ¶ 23).

On or about August 4, 2006, Przestrzelski entered Crivelli's bathroom through the body shop entrance, placed some cleaning supplies in a storage space located in the bathroom, and walked through the bathroom to exit through another door leading to the service area. (SMF ¶ 32). At the time Przestrzelski entered and walked through the bathroom, Plaintiff was inside allegedly talking to another service technician, Andy Wolbert ("Wolbert"), who was standing at a urinal. (Id.). According to Plaintiff, this was the second time Przestrzelski had entered the bathroom while Plaintiff was inside, with the first such incident having allegedly taken place in the late 1990's; however, Plaintiff made no complaint regarding the first alleged incident. (SMF ¶ 31).

Later on August 4, 2006, Plaintiff complained about Przestrzelski's presence in the bathroom to Michael Crivelli, who happened to be in the building that day. (SMF ¶ 36). The following Monday, Simpson spoke to Plaintiff about the incident and informed him that it would be "two weeks before he could pull [Przestrzelski] off the counter to reprimand her." (SMF ¶ 37). Simpson subsequently reprimanded Przestrzelski for carelessly entering the restroom without checking it for occupants and, on August 25, 2006, Przestrzelski apologized directly to Plaintiff and to Wolbert. (SMF ¶¶ 38-39). Nonetheless, in Plaintiff's view, the apology was not an effective response to the nature and severity of his complaint. (SMF ¶ 40). In particular, Plaintiff believed that, because this was not the first bathroom incident involving Przestrzelski, "something more appropriate to the situation than just an apology" was needed, such as a loss of pay or sending her home for a few days. (Id.). As a result, Plaintiff quit Crivelli

---

² Plaintiff does not recall discussing these complaints with Simpson at any time prior to submitting his written complaint in 2005; however, he does recall voicing similar complaints to Michael Crivelli, a personal friend and son of the owner of Crivelli, before and after submitting his written complaint to Simpson. (SMF ¶ 29; RSMF ¶ 26).

on August 25, 2006, which Plaintiff asserts was a constructive discharge caused by his having to endure a "hostile and offensive work environment...." (SMF ¶ 1; Complaint at ¶ 15).

### C. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion

for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### D. Discussion
#### 1. Sex Discrimination

In Count I of his Complaint, Plaintiff alleges that he suffered an adverse employment action (constructive discharge) as a result of Przestrzelski "entering a restroom occupied by members of the opposite sex, which would have resulted in the immediate termination of employment of any male employee who had done a similar act by walking into a women's restroom." (Complaint at ¶ 21).  Plaintiff goes on to claim that "[t]he decision of Defendant to treat the violation of Plaintiff's privacy differently than it would have had a male engaged in the same behavior was a violation of Title VII and the PHRA." (Complaint at ¶ 23).

Sex discrimination against males is commonly referred to as reverse discrimination.  In cases involving reverse discrimination, the Third Circuit has articulated a modified burden shifting analysis that differs from the usual test for sex discrimination enunciated by the

Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] See Iadimarco v. Runyon, 190 F.3d 151 (3d Cir. 1999). Under Iadimarco, the plaintiff must establish a *prima facie* case by presenting sufficient evidence to allow a fact finder to conclude that the defendant treated some people less favorably than others based on sex[4]. Next, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. See Corbett v. Sealy, 135 Fed. Appx. 506, 509 (3d Cir. 2005) (explaining Iadimarco standard); Medcalf v. Trustees of University of Pennsylvania, 71 Fed. Appx. 924, 927 (3d Cir. 2003) (same). Finally, the burden shifts back to plaintiff to show the defendant's reason for the action was pre-textual. Id.

Here, Plaintiff has failed to submit any evidence to support his theory that more severe disciplinary action would have been taken against a male supervisor charged with violating a female employee's privacy. Given the opportunity to submit such evidence in response to Crivelli's summary judgment motion, Plaintiff has merely presented similar conclusory allegations in his opposition brief, such as: "[i]f a male supervisor continuously touched, patted or rubbed a female subordinate, possibly even once, but especially after the employee had complained, that male supervisor would be severely disciplined, most likely fired;" and "if a male supervisor mindlessly walked into the women's restroom without knocking, that male supervisor would receive the equivalent of 100 lashes in the town square." (Document # 28 at

---

[3] In order to establish a *prima facie* case for a Title VII employment discrimination claim where there is no direct evidence of discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job and satisfied his employer's expectations; (3) he was dismissed despite his satisfactory performance; and (4) after his dismissal, the job remained open and the employer sought applicants for it. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to show that it took the adverse employment action against the plaintiff for a legitimate, nondiscriminatory reason. Id. Finally, the plaintiff has an opportunity to demonstrate that the legitimate and non-discriminatory reasons offered by the defendant are only a pretext for discrimination. Id.

[4] "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a *prima facie* case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race, color, religion, sex, or national origin.'" Iadimarco, 190 F.3d at 163 quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).

6

pp. 6-7).  Instead of substantiating these allegations with any type of evidence, Plaintiff simply argues that "common sense tells us that a male supervisor would have been treated differently." (Id. at p. 10).  However, Plaintiff's belief as to what "common sense" may dictate fails to create a genuine issue of material fact on the issue of prima facie discrimination.  See Rhodes v. SCI-Somerset, 2009 WL 440963 at * 8-9 (W.D.Pa. Feb 23, 2009)(Plaintiff's "belief that he would have been treated differently if he had been female, in the absence of record evidence, is mere speculation and is therefore insufficient to prove discrimination"); Lin v. Rohm & Haas Co., 293 F.Supp.2d 505, 518-19 (E.D.Pa. 2003)(a plaintiff's own belief that members of the opposite sex are treated differently, standing on its own, is a conclusory statement, insufficient to establish discriminatory intent).  Accordingly, summary judgment will be entered in favor of Crivelli on Count I of the Complaint.

### 2.    Hostile Work Environment/Constructive Discharge

In Count II of his Complaint, Plaintiff alleges that he "suffered as the result of being subjected to the hostile or offensive work environment created by his immediate supervisor's unwelcome and objected to sexual advances consisting of unwelcome and uninvited touching and rubbing of Plaintiff's body and inappropriate comments by his immediate supervisor." (Complaint at ¶ 28).  Plaintiff alleges further that "[n]o action was taken by management to control or restrain the behavior of the service manager and Plaintiff realized that he would either have to endure the hostile and offensive work environment or resign." (Id. at ¶ 16).  Thus, Plaintiff claims that "[h]e was constructively discharged as a result of Defendant's inaction." (Id.).

Taken as a whole, the foregoing allegations raise a claim of constructive discharge resulting from sexual harassment, or "hostile work environment," attributable to Plaintiff's supervisor, Przestrzelski.  This type of claim is commonly referred to as a compound hostile work environment/constructive discharge claim.

To establish hostile work environment, Plaintiff must show that:  (1) he suffered intentional discrimination because of his sex; (2) the discrimination was severe or pervasive;

(3) the discrimination detrimentally affected him; (4) a reasonable person would have been detrimentally affected by such discrimination; and (5) the existence of *respondeat superior* liability.  Shaw v. Pittsburgh Board of Public Education, 2009 WL 86709 at * 6 (W.D.Pa. Jan. 12, 2009), citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).  In addition, since he has stated a compound hostile work environment/constructive discharge claim, Plaintiff must also prove that the "working conditions were so intolerable that a reasonable person would have felt compelled to resign." Suders, 542 U.S. at 147 (citations omitted).  See also Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006)("to prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment").  These factors are discussed below.

### a.     Hostile Work Environment
#### i.     Discrimination Based on Sex

The first element of a *prima facie* hostile work environment claim asks whether Plaintiff suffered intentional discrimination because of his sex.  In this regard, Plaintiff claims that Przestrzelski frequently rubbed his back and patted his rear end, while calling him "honey" or "sweetie."  The record is devoid of any evidence that Przestrzelski had any physical contact with female employees, or verbally addressed females as "honey" or "sweetie," while the record does contain evidence that both Plaintiff and another male employee, Wolbert, were subjected to such treatment.  Thus, at the very least, there is a genuine issue of material fact as to whether Plaintiff suffered intentional discrimination because of his sex.

#### ii.     Detrimental Affect of Discrimination

The third element inquires whether Plaintiff was detrimentally affected by Przestrzelski's alleged behavior, and is, thus, subjective in nature.  As such, Plaintiff's written complaint to Simpson stating that he dreaded going to work because of Przestrzelski's conduct (Document # 22, Exhibit F at p. 5), along with his allegation that he felt he was compelled to resign rather than continue to "endure" the alleged "hostile or offensive work environment"

(Complaint at ¶ 15), are sufficient to meet this factor. Conversely, the fourth "reasonable person" factor is objective in nature and is often combined with the second "severe or pervasive" factor to create a single inquiry: did the plaintiff suffer harassment "'sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment'"? Pa. State Police v. Suders, 542 U.S. 129, 146 (2004), quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Jensen, 435 F.3d at 451. Thus, examination of this factor will be subsumed in the Court's analysis of the "severe or pervasive" factor, below.

###       iii.     Severe or Pervasive Nature of Discrimination

In determining whether gender-based discrimination was severe or pervasive, "occasional insults, teasing, or episodic instances of ridicule are not enough." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006). Instead, the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). No one factor is dispositive, and the analysis must focus on the "totality of the circumstances." Andrews v. City of Philadelphia, 895 F2d 1469, 1482 (3d Cir. 1990).

Here, Plaintiff complains that he was subjected to Przestrzelski's "unwelcome and objected to sexual advances consisting of unwelcome and uninvited touching and rubbing of Plaintiff's body and inappropriate comments." (Complaint at ¶ 28). During his deposition, Plaintiff testified that Przestrzelski's "uninvited touching" consisted of putting her arm around him, rubbing his back, and patting him on his rear end, while the "inappropriate comments" consisted of calling him "honey" and "sweetie." (Plaintiff's deposition transcript attached as Exhibit A to Document # 22, at pp. 21-22, 24). Prior to 2005, this conduct would occur primarily when Plaintiff went into Przestrzelski's office to access the inspection desk and computer that were located there. (Id. at p. 20). After these items were removed from Przestrzelski's office in 2005, Plaintiff testified that the inappropriate conduct continued at his work area, although he didn't specifically recall her patting his rear end after 2005. (Id. at pp.

9

22, 24-25).

      The record evidence fails to specify how frequent the foregoing conduct was alleged to have occurred or how this conduct might have interfered with Plaintiff's work performance.[5] Nonetheless, even assuming Przestrzelski's conduct occurred frequently, the challenged touching and inappropriate name-calling can hardly be characterized as physically threatening or humiliating.  While the Court does not condone Przestrzelski's behavior, and finds her conduct inappropriate in a workplace setting, such behavior did not rise to the level of severity needed to prove a hostile work environment, as it was not "extreme [enough] to amount to a change in the terms and conditions of employment." Faragher v. Boca Raton, 524 U.S. 775, 787 (1998); Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005); see also Amati v. U.S.Steel Corp., 2007 WL 3256850 at * 16 (W.D.Pa. Nov. 2, 2007)(workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (citation omitted).[6]  The additional allegation that Przestrzelski entered an occupied men's restroom on two different occasions, approximately seven years apart, does nothing to alter this conclusion, as the record indicates that, on both occasions, she simply passed through the restroom without looking, lingering, or exhibiting any behavior that could be characterized as

---

[5] It is interesting to note, however, that in his written complaint to Simpson in 2005, Plaintiff did not make any mention of Przestrzelski's inappropriate touching until the last substantive paragraph, where he objected to such conduct as being "unprofessional." (See Simpson Affidavit attached as Exhibit F to Document # 117, at Exhibit A). In addition, while Plaintiff made reference to Przestrzelski calling members of upper management "dear" and "hon," he made no mention of, or objection to, her calling him "honey" or "sweetie." (Id.).  This lack of attention to the very conduct Plaintiff now challenges here certainly calls into question the severity and pervasiveness of such conduct.

[6] In fact, the conduct challenged here pales in comparison to that found cognizable in Amati, where it was alleged that the plaintiff's eventual supervisor subjected her to unwanted physical contact, including martial arts holds, grabbing her breasts, rubbing her thighs, and hugging her; attempted to kiss her; asked her about sexual encounters and fantasies; told her he found her physically attractive; repeatedly said they should have an affair, said she was "not leaving him" to obtain another position; stared at her breasts; and exposed his penis and told her to perform oral sex.  Amati at * 18.

10

sexually offensive.[7]

In short, based on the totality of the circumstances presented on the record, no reasonable juror could find that Plaintiff has established that the alleged harassment and discrimination were severe or pervasive enough to prove the existence of a hostile work environment.[8]  In addition, because Plaintiff has failed to put forth evidence sufficient to establish a hostile work environment, he has, as a matter of law, failed to support his claim of constructive discharge by demonstrating "working conditions ... so intolerable that a reasonable person would have felt compelled to resign." Suders, 542 U.S. at 147.  Accordingly, summary judgment will be entered in favor of Crivelli on Count II of Plaintiff's Complaint.

### 3.   Retaliatory Discrimination Claim

In Count III of his Complaint, Plaintiff alleges that he "was subjected to retaliation by [Przestrzelski] because of his complaints to management regarding [Przestrzelski's] behavior." (Complaint at ¶ 33).  In particular, Plaintiff alleges that "Przestrzelski would retaliate against the Plaintiff by withholding lucrative service assignments and assigning the Plaintiff to non-lucrative assignments such as oil changes." (Id. at ¶ 14).  As a result, Plaintiff claims that his "earnings were depressed." (Id.).

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (commonly called the "retaliation provision of Title VII").  In order to state a claim of retaliatory discrimination, a plaintiff must show three elements: "(1) the employee

---

[7] In fact, according to Wolbert, at the time of the second bathroom incident in August 2006, Plaintiff was not using the restroom when Przestrzelski walked through, but had just entered the restroom at the same time Przestrzelski was exiting. (See Wolbert Affidavit attached as Exhibit H to Document # 22).

[8] Since the Court has determined that Plaintiff has failed to meet the combined inquiry presented by the second and fourth elements of his *prima facie* claim of hostile work environment, it is not necessary to discuss the fifth element regarding Crivelli's vicarious liability.

11

engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001).

In the event that a plaintiff satisfies the *prima facie* case of retaliation, the burden of production, not the burden of persuasion, shifts to the employer to "articulate some legitimate, non-discriminatory reason" for its adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) quoting McDonnell Douglas, 411 U.S. at 802. Then, a plaintiff must prove by a preponderance of the evidence that the proffered reason was merely a pretext and that in actuality, a retaliatory animus played a determinative or at least a motivating role in the employer's decision making process. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183 (3d Cir. 2003). To do this, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 764.

### a..     The *Prima Facie* Case
#### i.     Protected Activity

Considering the first element of Plaintiff's retaliation claim, Title VII not only protects the filing of formal charges of discrimination, but also "protects informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Abramson, 260 F.3d at 288. Here, Plaintiff claims that he "complained to management on several occasions of Przestrzelski's behavior and requested that action be taken." (Complaint at ¶ 13). Presumably, these complaints would include Plaintiff's written complaint to Simpson in or around August 2005. (Document # 22, Exhibit F at p. 5). Thus, the record is clear that Plaintiff engaged in

protected activity under Title VII.

### ii.     Adverse Employment Action

To establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v.White, 548 U.S. 53, 68 (2006)(internal quotations and citations omitted).  "[W]hether an action is materially adverse requires a fact intensive inquiry and an analysis of the totality of the circumstances." King v. City of New Kensington, 2008 WL 4492503 at * 22 (W.D.Pa. Sept. 30, 2008).

Here, Plaintiff alleges that Przestrzelski retaliated against him by "withholding lucrative service assignments and assigning [him] to non-lucrative assignments such as oil changes" to depress his earnings (Id. at ¶ 14).  However, the evidence of record fails to support this allegation.  In fact, the productivity reports attached to Przestrzelski's Affidavit make clear that Plaintiff's customer labor sales,[9] total labor percentage,[10] and dollar sales per repair order[11]

---

[9] Plaintiff's customer labor sales in years 2003 through June 2006 were as follows:
  $ 89,112 in 2003
  $ 91,747 in 2004
  $ 87,450 in 2005
  $ 38,858 through June 2006

[10] Plaintiff's total labor percentage in years 2003 through June 2006 was as follows:
  17.2% in 2003
  18.6% in 2004
  18.7% in 2005
  16.5% through June 2006

[11] Plaintiff's dollar sales per repair order in years 2003 through June 2006 were as follows:
  $ 53.94 in 2003
  $ 57.27 in 2004
  $ 66.35 in 2005
  $ 63.70 through June 2006

remained remarkably consistent from 2003 through June 2006. (See Przestrzelski Affidavit attached as Exhibit E to Document # 22, at pp. 5-8). Similarly, Plaintiff's wage figures during the same time period also remained consistent, both in comparison to each other and in relation to the other technicians. (Id. at p. 9).[12] Thus, Plaintiff's claim that Przestrzelski retaliated against him by withholding "lucrative" repair work in a concerted effort to depress his earnings is belied by the record evidence before the Court.

Based on the foregoing, the Court finds that Plaintiff is unable to demonstrate that he suffered a materially adverse employment action in retaliation for engaging in the protected activity of complaining to management about Przestrzelski's inappropriate behavior. As a result, Plaintiff cannot establish a *prima facie* case of retaliatory discrimination, and summary judgment will be entered in favor of Crivelli on Count III of Plaintiff's Complaint.

### 4.     PHRA Claims

Plaintiff's PHRA claims are interpreted under the same standard as Title VII claims. See Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996). Since Plaintiff has failed to provide sufficient evidence to survive Crivelli's motion for summary judgment on his Title VII claims, he similarly fails on his PHRA claims.

---

[12]

Plaintiff's wages in years 2003 through June 2006 were as follows:
$ 35,869.24 in 2003
$ 36,275.93 in 2004
$ 34,167.69 in 2005
$ 21,046.68 through June 2006

The wages of the other technicians over the same time period were as follows:

|      | Barry Sandrock | Kirk Hummer | Andy Wolbert | Charles Sampson |
|------|----------------|-------------|--------------|-----------------|
| 2003 | $ 62,119.39    | $ 58,161.01 | $ 42,238.81  | $ 13,276.08     |
| 2004 | $ 58,741.74    | $ 54,379.89 | $ 39,233.69  | $ 16,549.63     |
| 2005 | $ 55,503.78    | $ 54,976.66 | $ 32,886.05  | $ 17,317.91     |
| 2006 | $ 39,350.56    | $ 36,196.91 | $ 29,106.74  | $ 11,553.63     |

Although there was an obvious wage disparity between Plaintiff and the other technicians during the noted time frame, this disparity remained consistent throughout, thus rebutting any implication that Plaintiff's wages were "depressed" in retaliation for Plaintiff's complaints to management.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE VROMAN,<br>         Plaintiff | )<br>)<br>) |
| v. | ) C.A. 08-182 Erie<br>)<br>) Magistrate Judge Baxter |
| A. CRIVELLI BUICK PONTIAC GMC,<br>INC.,<br>         Defendant. | )<br>)<br>)<br>) |

## ORDER

AND NOW, this 22nd day of March 2010,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Document # 20] is GRANTED, and this action is DISMISSED.

The Clerk is directed to mark this case closed.


                                        S/Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        United States Magistrate Judge